Good morning, Your Honour. My name is Manpreet Garland and I'm appearing here on behalf of the petitioner, Mr. Gurpur Singh. Mr. Singh is a native and citizen of India who last entered the United States without inspection on or about April 15, 2018. Upon entry, he was placed in proceedings and in lieu of removal, Mr. Singh submitted his application for asylum, withholding removal and protection under the Torture Convention. On June 27, 2019, at the conclusion of the individual hearing by an immigration judge in Oregon, Mr. Singh's applications were denied. In doing so, the judge found Mr. Singh to be not credible. In addition, the judge made a frivolous asylum finding against Mr. Singh and ordered that he be removed to India. Mr. Singh timely appealed the decision to the Board of Immigration Appeals. On May 23, the Board dismissed Mr. Singh's appeal. And in doing so, the Board basically affirmed the decision of the immigration judge. In arriving at this decision and finding that the petitioner was not credible, the immigration judge relied heavily on the matter of RKK, which is a Board decision in 2015. And in addition, relied on the matter of IL, again a Board decision, which lays down the ground rules for a judge to find a case to be frivolous. However, in doing so, the immigration judge did not adhere to the procedural outlines that have been outlined by the Board in both these cases. In RKK, the Board set forth a three-part framework for the immigration judges to use when relying on similarities between two cases in making the adverse credibility finding. The Board laid down that the immigration judge should give the applicant meaningful notice of the similarities that are considered to be significant, give the applicant a reasonable opportunity to explain the similarities, and three, consider the totality of the circumstances in making a credible… I guess I'm having a hard time seeing what the problem is with the process. There was actually extensive process in front of the IJ on all these issues, right? That is correct, Jana. There is. But in this case, the immigration judge did not follow those. The immigration judge did not give a meaningful notice of the similarities that are considered to be significant, and that would have affected the immigration judge's decision. And he was not given an opportunity to explain those similarities, nor did the immigration judge consider the totality of the circumstances in this case. Now, this Court, and unfortunately there are no published decisions on this matter in this circuit. However, it has been time and time again in unpublished decisions, this Court has said, and even in RKK, it has been very clearly mentioned that each of the three steps that I just read out to the Court, each of the steps must be done on the record in a manner that will allow not only the Board, but any reviewing Court to ensure that the procedures have been followed. And it has not been done in this case. In this matter, at the conclusion of the testimony, the government attorney presented a motion to the judge, an RKK motion, as it's commonly called. And based on that, the judge, and the judge didn't even review that motion on the record, did not address those similarities or the concerns that the department was raising with the respondent, but just went on and continued the matter. And when the Court reconvened, again, there was no discussion with or an opportunity given to the respondent. The judge basically went on to hear the closing. Well, I thought the government came forward with a whole exhibit that showed that, you know, they had declarations that were very similar to the declaration your client filed. And you were, and your client, I'm not sure if you represented this client below, but your client was given notice of this. And then there was a hearing in which your client's counsel was allowed to explain all this. What was lacking in terms of process? Your Honor, in terms of process, that was a motion of the Department of Homeland Security. That was not, so under RKK, the judge is charged with the duty of basically informing the respondent on the record of that, of the requirements, of the similarities. And that did not happen. So procedurally, our position is procedurally that the immigration judge did not follow what has been laid out by the Board. Well, I mean, the similarities are fairly glaring. And I can appreciate why the immigration judge was concerned here because, and frankly, we've seen many cases that involve almost this identical fact pattern where somebody's putting up posters, and then they're attacked by four people. And then later they're riding a motorcycle from a blood drive or a wedding, and they're attacked again and threatened. I mean, I do wonder what the explanation is for this as to why there's so many cases that have almost identical allegations. Can you explain that? Sure, Your Honor. Your Honor, what the Court is referring to as identical, I think we like to call those commonalities. Those are very, that's the common way a person from two opposing parties would react. And what I mean to say is that if, Mr. Singh is a member of the Somnikar-Lehman Party, and he was targeted by the BJP, BJP being the Bharatiya Janata Party, which is the ruling party in India. And they are the controlling party. They control the entire country. And that is the modus operandi that the workers of BJP use to basically suppress any opposition. And that is what all these declarations are talking about. And in the matter of RKK, I think so, when interpreceding similarities are being discussed, the key phrase is whether they're almost identical, and almost identical in language, details and grammar. So I hear your point on that. I mean, the other fact that I feel like I've seen myself in some of these cases repeatedly is in the second attack, they're always rescued by farmers. That's a little bit harder to point to as, like, is that, do the farmers just wait there because they just, like, have to rescue these people all the time, or? Sure, Your Honor. Your Honor, if you look at the demographics of where the petitioner is, the petitioner belongs to the state of Haryana, which is a northern state, and right above the state of Haryana is the state of Punjab. Both these states are heavily agricultural states. And all these incidents that are taking place are taking place in the rural area. And so it won't be uncommon that, you know, the people who are coming forward would be the farmers, who are either working the farmlands or who are folks who are just walking the streets at that time. So that's why I think it's very common to see that repeatedly in all these cases that the applicant or the petitioners are saying that, you know, hey, there were farmers who came to our rescue. But it's more than that, right? I mean, that's one piece of it. But it's I'm putting up posters, four people come in a car, the car has BJP logo, they threaten me. Then I'm returning from a blood drive or from some other kind of community event. I'm on a motorcycle. They come again. They attack me with sticks. I mean, I think I've personally considered maybe 20 or 30 cases involving this exact same fact pattern. Sure. You know, if I'm a worker of a political party, as a worker, what are my duties? I would be promoting the party. I would be attending rallies. I would be putting up posters in order to propagate the beliefs of my party. And so those are common things that any worker would do. Interestingly, and I'm not trying to be political here, Jana, yesterday I was watching the TV and I was looking at the DNC convention. Each and every attendee out there had a placard in his hand. What are they doing? And there were people who were working the floor. What are they doing? They all were probably workers or supporters who were trying to support the party. And this situation is no different. Any work that a worker is doing, it is to promote his party. And that's why you see the— Now, to be clear, okay, so I don't think you're hearing any credulity or whatever from the panel about the fact that there's a political differences and all that. It's just that this process is always the same. It feels formulaic. You know, it's always four people that attack them. The second time they're almost always riding a motorcycle. Somehow they get stopped even though they're on a motorcycle. And then it's always farmers that save them. You understand? Yes, Jana. If you're from that part of the world, Jana, motorcycles and scooters are very common modes of transportation. But they can't outrun people, it sounds like. They're not very good at outrunning people because they always— I would hope that I was on a motorcycle, I'd get away occasionally, you know. Sure, Jana. But, again, you know, and those streets are pretty narrow, and they're pretty crowded. So, yes, it might be— It's just a funny thing. I mean, I understand the idea, you know, you might have a M.O., a motorcycling day, of, like, how you attack your opposition people. But it's always they're at some blood drive the second time, and then they're on a motorcycle. Oftentimes that's miles away, but somehow they know. I mean, it's almost like they're spying on them at all times. They know that they're at this blood drive, and then they catch them on the motorcycle coming home. I mean, can you understand that, like, it just seems— Yes, sir, I do get your point. But I think, sir, at the same time, I think, sir, our position is, and, you know, somebody who hails from that part of the world, too, you know, that's the way it is. It's very easy because if you're part of the ruling party, the government machinery is with you, and you have all the resources to do that. And you have to understand that petitioners, folks like the petitioners, are a minority. And they are the ones who are basically seeking separation from India. So it's a minority community. It's a minority set of people. It would be very different if there were two large national parties going at each other. So being a minority, belonging to a minority party, it's very easy. You're easily identifiable based on your political beliefs. And that's why it's easy to track anybody who is supporting Khalistan or is basically part of the Maan party, which most of these individuals are. You know, we're not deciding this de novo. We have the immigration judge perhaps could have heard these arguments and reached a different conclusion than he or she did, but they reached the conclusion that the allegations here in the declaration were essentially very similar to other ones, and that undermined the petitioner's credibility and caused the immigration judge, in this case, to conclude that the application was frivolous. Perhaps somebody could have reached a different conclusion, but that's the conclusion we have, and we give some deference to what the IJ found. And in light of that, where do you see the error here? Is the error a process error, or is the error that even if you had a great process, this was still wrong? It's an error in the process because the immigration judge did not give the petitioner an opportunity to explain the similarities. And as laid down in RKK, and even as held by this Court in an unpublished decision of Vang v. Garland, decided on February 28, 2022, and I think this was exactly what this Court came up with, too, that these were the processes that were laid by the Board, and the Board and the immigration judge did not follow those. And that is the similar situation that is here and is present in this case, too. Yes, it would have been a very different scenario if the judge had explained to the petitioner, this is the motion that is being filed, these are the similarities that I'm seeing in this case, and based on the similarities, unless you're able to explain it to me, I would be bound to find you to be not credible and I'm going to deny your case. Now, yes, now at this point, the petitioner would have been noticed. And thereafter, if it was being denied, yes, that would be pretty fair play at that point. But that thing never happened yet. There was a motion gets filed, there's no discussion on the record, the IJ does not take any step to explain it to the petitioner, and at the end of the conclusion of the oral arguments, he denies it. And not only based on RKK, and he also goes out and finds his claim to be frivolous. Again, there's a motion that gets filed by DHS, but no sort of immigration judge, again, fails to give an opportunity and explain to the petitioner that he would be inclined to find his claim to be frivolous on this basis and seek some kind of a response from it. And so our humble submission is that because of these procedural issues, that at the rate that the Court should remand this case back to the Board and with guidance to the Board to follow the procedures as set forth in RKK. Okay. Thank you. We'll put two minutes on the clock for rebuttal. Thank you. So we'll see you shortly. Ms. Roberts. Good morning, Your Honors. May it please the Court, Roberta Roberts, on behalf of the Attorney General of the United States of America. This case is about upholding the integrity of asylum proceedings while complying with procedural protections for the applicant, which is what the agency did here. The immigration judge followed the procedural requirements of matter of RKK to the T, and I would like to provide you with some examples of how that was done. At the conclusion of the first hearing on June 4th, 2019, after DHS submitted its rebuttal evidence, the immigration judge specifically said at AR-161 that I want to let Mr. Sandhu, Petitioner's counsel at that time, investigate and consider some of the points. What rebuttal? Was this the motion that you're referring to, the rebuttal evidence, or is this something else? Yes. The motion was the rebuttal evidence to consider the inter-proceeding similarities. That motion was filed when exactly, in the spring of 2019? Yes, June 4th, 2019. Okay. And then walk through, I think, carefully the chronology here for us. Sure, Your Honor. So at that first hearing, June 4th, 2019, DHS provides the rebuttal evidence, the motion that Petitioner's counsel mentioned. Does that have all the exhibits? Yes. That includes the chart that DHS prepared showing the similarities, the nine different similarities between six different declarations and the Petitioner's declaration, and that was included in the record as well with that motion at AR-281. And so DHS provides these redacted declarations, a chart showing all of the different similarities, and the immigration judge says, I want to let Petitioner's counsel investigate and consider some of the points. This is at AR-161. And then the immigration judge says at AR-162 that he has been seeing these same sort of claims happening over and over again and lays out on the record some of the similarities that cause concern. He says they involve the same, frequently same number of attacks, vehicles bearing logos, and he mentions some other similarities there. And this is at AR-162. And then at AR-163, again, he says that, you know, at the next hearing that Petitioner's counsel could consider DHS's points, and the hearing is then continued for an additional hearing that does not happen until three weeks later on June 27, 2019. So this layout of events shows that the Petitioner, Mr. Singh, did in fact have meaningful notice in a variety of ways. Not only did he have meaningful notice of the significant similarities by the submission that DHS provided, including a chart and the redacted declarations, but the immigration judge also stated some of the similarities that were concerning to him as well on the record before continuing proceedings. So it appears to me, and I guess we'll let opposing counsel see if I'm correct in it, it seems like he's saying in addition to all that, in order to comply with ARCA-K, the immigration judge needs to sort of have a, maybe do all the stuff that was done in this case and then have another hearing where you sort of, you know, kind of a formalized, almost like, I guess, you're doing a plea bargain, you know, in a plea context, you know, where you say, okay, I am about to find that you are not credible, that this was frivolous. And then lay out, I suppose, everything again, and then that seems to me what he's saying was missing in that case. And maybe I'm, what is your response to that? Matter of ARCA-K does not require that. It does require that the petitioner is provided with a reasonable opportunity to respond, which can involve providing a continuance for the petitioner to do some investigation, perhaps submit additional evidence to explain why there are these significant similarities. And that was done here in this case. Can I ask, you know, one curiosity of this case is that this motion was brought in this case, whereas I've seen many cases that, and I'm aware of other cases that involve similar allegations, and it's not apparent that this motion was brought. So why was the motion brought here and not in other cases? That I am not sure, Your Honor. I'm not sure what DHS's, you know, reasonings would have been in other cases versus this case. But in this case, we have a prime example of Matter of ARCA-K being followed to the T and petitioner being provided with the procedural protections. But, I mean, one concern one could have is whether people are being dealt with equally at the IJ level here because it seems to me that if this motion could be filed here, it probably could have been filed in lots of other cases that I'm aware of. It has been filed in other cases, Your Honor. There was a published opinion from our court a few weeks ago. You may know this case, Kumar v. Garland, in which the petitioner prevailed on appeal. But I'm looking at the case, and it says, That's awfully similar allegations to what we have here, and yet the petitioner in that case actually prevailed in this court, whereas in this case we're being told that the same allegations are frivolous. I'm just trying to understand the government's approach to these cases because that doesn't seem especially consistent. Well, we are taking a case-by-case basis, which is what the law requires, taking each case on a case-by-case basis, and step three of the matter of RKK framework, making the credibility determination What's different about this case than so many of these other cases? I, unfortunately, cannot speak to the other cases because I'm not aware of what was in the record in those other cases. I can only speak to this case that we have before us. But here in this case, the decision was come to by looking at the record and looking at the totality of the circumstances of the evidence that was provided in this record. And in this record, the petitioner's counsel did not provide a sufficient explanation for the similarities, although they were provided with a reasonable opportunity to do so. Are you aware of any other Man Party case in which this kind of motion was filed, like it was here? Not in particular. I'm not able to provide a specific, you know, a number or case number for those other cases. However, here, when the petitioner was provided with three weeks' continuance to address these similarities, the petitioner provided evidence about cow killings and how in those cases there were similarities of multiple people saying that the police said that they would falsify charges against them. While that could perhaps go to one aspect of the similarities here, that all seven of the declarants, petitioner and the six others, all said the police told them the same thing, that explanation did not address why are there so many unnecessary minute details that are included in the each of these declarations that did not need to be included. And both Matter of RKK's citing the Second Circuit seminal decision, my Cheye, both of those cases say that an indicator of a falsity or something that would make the court ask about credibility concerns is when there are unnecessary details that are included that do not have to be. For example, the fact that, as Your Honors have mentioned, that they're always rescued by farmers. Another example is that they said that they were hanging up posters in a nearby village or a neighboring village. It would have just been enough for them to say they were hanging up posters for their party. But for each of these to say specifically, and I can read them out to you here, in Petitioner's Declaration AR385, I was placing posters in a neighboring village for my party. Declaration 1, AR259, I was putting up posters in a nearby village for the redacted party's upcoming health care service. Declaration 2, AR262, I was putting up posters in a nearby village relating to an upcoming blood donation camp. Declaration 3, AR266, I was putting up posters for the party in a nearby village. Declaration 4, AR270, I was putting up posters for an event in a nearby village. Declaration 5, AR275, I was putting up posters in a neighboring village. Declaration 6, AR278, I was placing posters in neighboring villages for the upcoming blood donation camp organized by my party. Mr. Roberts, let me ask you to go back about 62 years or so. And let's say we were in Mississippi. And an African American couple goes to the registrar's office to try to register to vote. And they're accosted out front by white supremacists who say, we don't want your type voting here in this town, and you better get the hell out of here. And later that day, the hooded people show up at their home and burn a cross on their yard. And when the father, husband comes out, he's told, we don't want your kind here. And if you try to do that again, we're going to kill you. Would it be a big surprise to see the same fact pattern repeated for different people in that context? And wouldn't it be quite possible that there might be 8, 10, 12, 20 African American couples treated exactly the same? Yes, Your Honor, it would be possible. However, there is a difference between similar claims and virtually identical claims, which is what we have. And how much of that has to do with the fact that a lot of these individuals may not speak great English, don't understand the legal system, and they get to lawyers who use a boilerplate kind of pleading that emphasizes similarities because they don't want to take the time to get the details exactly right. Petitioner's counsel in this case did say that, before the immigration judge, did say that there was another client that he represented, and that was why some of those two declarations between this petitioner and another one had verbatim language because they were provided with a template. So that was taken into consideration, and the immigration judge did say, okay, well, that's understandable that there was some boilerplate language or some structural similarities because of the template that you provided your clients. But what about these other declarations that were prepared by other attorneys who were not your clients that also include these unnecessary-to-include minute details? And that is where... But the immigration judge, he questioned the petitioner, right? I mean, the petitioner testified. But I don't see the IJ having made findings saying, well, I've listened to the testimony, and I just don't think the testimony is credible. Was that found here? Not about the specific verbal testimony that was provided. However, the verbal testimony, for the most part, matches what was included in the written declaration, which has the same details as the other six. Right, but you might think that if someone filed what we're being told is a frivolous asylum application, that some questioning would reveal that fairly quickly, no? That the petitioner would not be able to keep the story going once more details were asked. I'm sorry, Your Honor. Could you please repeat? What I'm saying is, you know, the adverse credibility finding, a lot of times we get an adverse credibility finding, and it's because the IJ listens to the petitioner and says, I just don't find this credible, for whatever reason. Sometimes there's inconsistencies. Sometimes the petitioner lacks details. Sometimes their demeanor reveals that they may not be telling the truth. Here, the IJ does not appear to have made any of those findings, even though the petitioner testified to his account. So what do we make of that, that the petition, the request for relief we're being told is frivolous? Notwithstanding that, the petitioner evidently, it's not found that he, in the course of his testimony, lied or was unable to carry on to keep the story going. Your Honor, the immigration judge complied with the four steps in matter of Y.L. that's required to make a frivolous asylum application finding. And there is substantial evidence that supports the immigration judge making this finding. As we have seen, the written declarations is also a form of testimony and evidence in this case. And so looking at the evidence that was submitted, including country conditions evidence, which did not corroborate what was written or stated orally at the hearing, those all support this frivolous asylum application finding as well, Your Honors. And I see that I am running out of time. The respondent would request that the petition for review is denied. Thank you, Your Honors. Your Honors, the only question that gets asked to the respondent is, and that's why the DHS counsel is, and this is on ER 157, if it were true that many, many, many other people tell exactly the same story that you're telling today, what would you think about that? In the entire record, that is the only question that's being asked to the respondent. So, you know, you heard my question to the government's counsel. It does seem to me that you are saying you want a more formalized process here, because, I mean, what you did have is you have the government files this thing, and so you're on notice. Usually that's what happens in litigation is you get the other side's, you know, and it's a little bit like saying the other side has asked for sanctions. The other side's filed a motion for sanctions. But I didn't know, Your Honor, that you were considering sanctioning us. But it seems to me you're kind of on notice just from that alone. And then you do have the judge saying, well, what do you think of this motion? But you're saying there just needs to be a more formalized, I think. And if so, what is — why does it have to be a more formalized? Why is there not enough notice here? Sure, Your Honor. It has to be formalized because that's what — that's how it has been laid down in the matter of RKK. RKK says that. RKK says that the judge is — It says they have to have a — the judge — they have to be aware of it. The judge has to give them an opportunity to respond, which he did. I mean, he actually asked a question. He didn't — he didn't do something more formalized, but he did say, what do you think of this?  I think so. There's a — if I may, Your Honor. So in RKK, Your Honor, it clearly lays down three steps. An immigration judge should give the applicant a meaningful notice of the similarities that are considered to be significant. And that seems to have happened here because the DOJ created this great chart and everything, and the IJ said — and then the second thing is they have to give the applicant a reasonable opportunity to explain the similarities. Yes. Which the IJ did at least two things here. He asked the question, and then he gave them time, you know, recognizing that. And — but you're saying it needs to be something more than that. And I guess you're saying that it needs to have like a complete separate hearing dedicated. Is that what — is that your position? No, not a complete separate — and, you know, I respectfully disagree with you, Your Honor. Here the judge did not address any of these issues directly with the applicant. They were not addressed. It was more of a conversation between the judge, Petitioner's counsel, and the DHS. But what I'm saying is the DHS — the DHS says, here's a whole bunch of similar things here. And so you have that. And the IJ refers to that. So that's why you heard me, you know, in a plea — I guess some of our plea jurisprudence, you have to actually say it. Even though you could give it to them in paper, you have to actually say it. Is that what you're saying? Is that the judge had to orally say each thing line by line? Is that what you're saying? That is correct, Your Honor. And he should have — the judge should have done that, should have given that opportunity to explain to the — It's insufficient as a matter of law to have just referred to a document where it's all written. That is correct, Your Honor, because that document was coming from DHS. And it came at a point at the conclusion of the testimony. Just to make sure I understand. So do you believe that the law required the IJ to more specifically question Mr. Singh about these issues? Because I think you're right that a lot of the discussion was done counsel to counsel. And do you think the IJ — it was required to ask Mr. Singh more directly about some of these issues? That is correct, Your Honor, in accordance with RKK. I think that's what RKK laid down. You think RKK requires that? Yes, Your Honor, it does. And the — and so it says immigration judge should give the applicant meaningful notice. Do you interpret that to mean to give the actual petitioner here the opportunity to explain more about this? That is correct, Your Honor, not the counsel. So they would need to have a procedure where they bring them up on stand or something and ask them sort of issue by issue. How do you explain why this is? You know, most — and I'm here in San Francisco, Your Honor. When a motion of RKK gets filed, I think most of the immigration judges, they go through all the points that are in the motion, and they explain it to the respondent. And then thereafter, give him or her an opportunity to explain those. And that would be in accordance with RKK. Okay. And that's not being followed. I think we have your argument. We've taken you over your time. Sure. Thank you, Mr. Garra. Thank you, Ms. Roberts. This matter is submitted. The court is going to take a five-minute recess between cases. All rise.
judges: BRESS, VANDYKE, Lasnik